**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SUSAN GAIL PRINCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **Case No. CIV-15-933-CG** |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant.[1] | ) |

## OPINION AND ORDER

Plaintiff Susan Gail Prince brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of the Social Security

Administration ("SSA") denying Plaintiff's applications for disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381-1383f.  The parties have consented to the jurisdiction of a United States

Magistrate Judge.  Doc. No. 15.  Upon review of the administrative record (Doc. No. 13,

hereinafter "R. _"), and the arguments and authorities submitted by the parties, the Court

reverses the Commissioner's decision and remands the matter for further proceedings.[2]

---

[1] Per Federal Rule of Civil Procedure 25(d), Acting Commissioner Nancy A. Berryhill is
substituted as the successor public-officer defendant in this case.

[2] With the exception of the administrative record, references to the parties' filings use the
page numbers assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB and SSI on June 17, 2011, alleging a disability onset date of September 10, 2010, and alleging disability based on degenerative disc disease, retinitis pigmentosa,[3] and arthritis. R. 124-35, 147-53, 154-57. Following denial of Plaintiff's applications initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing. R. 25-52, 53-67, 70-75. The ALJ issued an unfavorable decision on January 27, 2014. R. 11-20. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-5; *see* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 10, 2010, the alleged onset date. R. 13. At step two, the ALJ determined that Plaintiff had the severe impairments of chronic lumbago, degenerative disc disease, and obesity. R. 13-14. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14-15.

---

[3] Although Plaintiff refers to the condition as "retinitis pigmentosis," R. 147, the correct name of this condition is "retinitis pigmentosa."

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 15-18. The ALJ found that Plaintiff had the RFC to perform light work subject to additional limitations:

> The claimant is able to lift and/or carry, and push and/or pull, twenty pounds occasionally and ten pounds frequently. She is able to stand and/or walk for six hours in an eight-hour workday and sit six hours in an eight-hour workday. The claimant is able to perform work requiring occasional stooping. She is able to perform work requiring frequent climbing of ramps, stairs, ladders, ropes and scaffolds. She is able to perform work requiring frequent balancing, kneeling, crouching and crawling. The claimant is afflicted with symptomatology from a variety of sources that would include mild to moderate occasional chronic pain that would be of sufficient severity as to be noticeable to her, but nonetheless she is able to remain attentive and responsive in a work setting. Appropriate use of her medications does not preclude her from remaining reasonably alert for required work functions.

R. 15; *see* 20 C.F.R. §§ 404.1567(b) (defining "light work"), 416.967(b) (same). At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a medication technician as it was actually performed. R. 18-19.

The ALJ continued to step five and considered in the alternative whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the hearing testimony of a vocational expert regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ made the alternative findings that Plaintiff could perform occupations such as laundry sorter, mailroom clerk, and marker, all of which offer jobs that exist in significant numbers in the national economy. R. 19. The ALJ concluded that Plaintiff had not been under a disability,

as defined in the Social Security Act, from September 10, 2010, through the date of the decision.  R. 20.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied.  *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted).  The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met."  *Wall*, 561 F.3d at 1052 (internal quotation marks omitted).  While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff presents two broad challenges: (1) the ALJ's RFC determination was legally flawed and not supported by substantial evidence; and (2) the ALJ's credibility analysis was legally flawed and not supported by substantial evidence.  *See* Pl.'s Br. (Doc.

No. 20) at 12-24.  The Court finds the first claim of error persuasive and, for the reasons set forth below, reverses and remands the decision of the Commissioner.

A. *Plaintiff's Vision Impairment*

Plaintiff argues that the ALJ failed to properly consider her vision problems.  *See* Pl.'s Br. at 18-19.  Plaintiff applied for DIB and SSI on the basis of degenerative disc disease, retinitis pigmentosa, and arthritis.[4]  R. 147.  Plaintiff reported the diagnosis of retinitis pigmentosa to the SSA consultative examiners.  *See* R. 218, 236.  Plaintiff also complained that her vision was worsening and that she had difficulty reading.  *See* R. 166, 218.  At her SSA interview, the interviewer noted that Plaintiff had difficulties both reading and seeing, and consultative examiner Dr. Brad Liston recorded her best corrected vision as 20/50 bilaterally and in the right eye and 20/100 in the left eye.  R. 156, 218.  The ALJ, however, did not discuss Plaintiff's alleged vision impairment.[5]

Given that Plaintiff's past relevant work requires reading and frequent near visual acuity, and two of the three alternative step-five jobs require frequent near visual acuity (with the third requiring it occasionally), the ALJ's disregard of this impairment requires reversal.  *See Washington v. Shalala*, 37 F.3d 1437, 1438-40 (10th Cir. 1994) (reversing when the ALJ mentioned plaintiff's vision loss when summarizing the medical evidence

---

[4] Retinitis pigmentosa is a group of incurable, genetic eye disorders affecting the retina's ability to respond to light.  It is progressive, causes a slow loss of vision, including central (reading) vision, and may eventually lead to blindness.  Kierstan Boyd, *What Is Retinitis Pigmentosa?*, American Academy of Ophthalmology (Sept. 1, 2016), https://www.aao.org/eye-health/diseases/what-is-retinitis-pigmentosa.

[5] The ALJ did state that Dr. Liston's "[e]xamination of the head, eyes, ears, nose and throat were normal," but this statement does not address Plaintiff's vision.  R. 16; *see also* R. 218.

but did not discuss how that loss impacted plaintiff's ability to do work); *see also Dictionary of Occupational Titles* (4th rev. ed. 1991) §§ 355.374-014 (certified medication technician), 1991 WL 672938; *id.* 361.687-014 (laundry sorter), 1991 WL 672991; *id.* 209.687-026 (mailroom clerk), 1991 WL 671813; *id.* 920.687-126 (marker), 1991 WL 687992. On remand, the ALJ should consider Plaintiff's vision problems and whether they affect the RFC evaluation and the related findings at steps four and five.

## B. Plaintiff's Back and Leg Pain

Citing evidence of her back and leg pain, Plaintiff challenges the ALJ's determination that Plaintiff could stand and/or walk for six hours out of an eight-hour workday. Pl.'s Br. at 18. As noted by Plaintiff, the ALJ reviewed Plaintiff's medical records and set forth specific findings regarding the limitations caused by her back and leg pain. Plaintiff argues that the ALJ's review was incomplete, however, because it "wholly overlooked or dismissed without adequate explanation a considerable amount of evidence that undermined the ALJ's reasons for his RFC assessment and the conclusion that she could stand and/or walk for six out of eight hours a day." Pl.'s Br. at 18. Relatedly, Plaintiff argues that, when considering the record as a whole, the ALJ's determination that she could stand or walk for six out of eight hours is not supported by substantial evidence. *Id.*

### 1. Consideration of Entire Record

An ALJ's decision must be based on substantial evidence in the record as a whole. *Washington*, 37 F.3d at 1439. An ALJ may not pick and choose among uncontroverted medical evidence, taking only those parts that are favorable to his position while ignoring

other evidence. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). Moreover, an ALJ's RFC assessment must be supported by a discussion citing specific medical and nonmedical evidence and describing how that evidence supports the conclusions reached in the RFC. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996); *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). Although "an ALJ is not required to discuss every piece of evidence," the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. §§ 404.1520(a)(3) ("We will consider all evidence in your case record . . . ."), 416.920(a)(3) (same). An ALJ also must explain the resolution of any material evidentiary inconsistencies or ambiguities in assessing an RFC. SSR 96-8p, 1996 WL 374184, at *7. Here, the ALJ's decision was flawed as set forth below.

Here, although the ALJ addressed certain medical evidence in the record, his findings with respect to the limiting effects of Plaintiff's back and leg pain do not reflect consideration of all the evidence.

In reference to the medical records from Brad Liston, DO, the ALJ stated that "[i]t is reasonable to assume that if the claimant's back condition were as severe as alleged, there would have been limitations in straight leg raising . . . ." R. 17 (citing Ex. 1F (R. 217-23)). But later exams do reflect positive straight leg raising tests. *See* R. 261 (Sept. 14, 2012); 274 (Mar. 13, 2012); 293 (May 2, 2013).

In discussing Plaintiff's surgery on April 9, 2012, for left lower-extremity radiculopathy, the ALJ stated that the evidence from Exhibit 7F indicated that Plaintiff's "pain was improved after the procedure." R. 17 (citing Ex. 7F (R. 252-59)). While this may have been true immediately after the surgery, assessment of the record as a whole undermines the conclusion that surgery resolved or lessened Plaintiff's pain. Other portions of the record evidence that Plaintiff's pain and other problems remained unchanged or increased after the surgery:

- April 20, 2012: "She states her left leg pain is basically unchanged." R. 270.

- May 11, 2012: "[H]er left leg does feel better from her buttocks down to her knees. She still has some paresthesias below her knee and into her left foot." R. 269.

- May 24, 2012: "She states that most of her left leg pain has resolved. She still has a little bit of paresthesia in her left foot." R. 267.

- July 6, 2012: "She is still having low back pain and paresthesia in her left leg." R. 263.

- August 14, 2012: "[Plaintiff] is still having some lower back pain. Her leg symptoms to be [sic] less of a problem. She still has some paresthesias[.]" R. 262.

- September 14, 2012: "She continues to have left greater than right leg pain and her back is doing reasonably well at this point." Assessment: Chronic pain syndrome. "I do not feel that her chronic pain syndrome is going to be very easy to manage at this point." R. 260-61.

- May 2, 2013: "Chronic low back pain - thinks medication isn't helping much anymore." "[Plaintiff] is unable to wa1k without assist today, she has swelling from the knees down bilaterally, she has severe pain in the lumbar region, she is smoking at least one pack/day, having chest pain, coughing, can't sleep in bed sits up in a recliner for breathing and relief of low back pain. Complains of 'burning' in the feet and pain in the back of both legs, [left] > [right]. She had surgical back repair done one year ago, and states the pain level today is just as bad. She has swelling in the hands as well could be r/t gabapentin use." "Pain scale 8." Musculoskeletal exam indicating abnormal movement of all extremities, abnormal spinal appearance and movement, spinal pain on palpitation, muscle spasms, spinal pain caused by motion, two positive straight leg raising tests. R. 292-93.

- July 10, 2013: "Pain scale 9." "Abnormal movement of all extremities." R. 285.

- September 5, 2013: "Pain scale 9." "Abnormal movement of all extremities." R. 282-83.

- October 2, 2013: "[B]ack pain and pain in right knee from a recent fall[.]" "A burning sensation in both legs and feet." "Pain level 8." Musculoskeletal exam indicating abnormal movement of all extremities, abnormal spinal movement, spinal pain on palpitation, muscle spasms, spinal pain caused by motion, muscular weakness in legs. R. 279-81.

- October 29, 2013: "Pain level 8." "Pain in lower back, right leg and knee." Musculoskeletal exam indicating abnormal movement of all extremities, abnormal

spinal appearance and movement, spinal pain on palpitation, muscle spasms, spinal

pain caused by motion.  R. 276-77.

The ALJ's decision does not reflect that he considered the evidentiary inconsistency

between these later records and his statement regarding postsurgery improvement.

The ALJ reviewed records from Bruce Pendleton, MD, the neurosurgeon who

performed the April 9, 2012 surgery, and concluded that "[t]he evidence from this exhibit

indicates that [Plaintiff's] symptoms are manageable with medication."  R. 17 (citing Ex.

8F (R. 260-75)).  The ALJ noted that Dr. Pendleton started Plaintiff on Neurontin[6] three

times a day in April of 2012; Plaintiff exhibited swelling due to the medication in May;

"Neurontin controlled the symptoms in [Plaintiff's] legs" in August when she was no

longer taking any narcotic pain medication; and Plaintiff had leg pain but less back pain in

September.  R. 17.  But the ALJ failed to consider Dr. Pendleton's opinion in September

that, upon increasing her dosage of Neurontin, he did *not* believe that Plaintiff's pain was

"going to be very easy to manage at this point."  *See* R. 261.  Moreover, the ALJ's reliance

upon his findings that the evidence from Exhibit 8F indicated that Plaintiff's symptoms

were managed with medication failed to consider evidence in other exhibits—specifically

Exhibit 9F (R. 276-300)—indicating that Plaintiff's symptoms were not easily managed

with medication.

For instance, in May 2013, Plaintiff stated that she felt medication was no longer

helping her pain.  *See* R. 292.  Additionally, the ALJ failed to consider that, while an

---

[6] Neurontin is a brand name of gabapentin.

increase in Neurontin helped control Plaintiff's leg pain, it caused increased swelling, weight gain, and paresthesia. *See* R. 292-94, 287-88, 289-90, 279-81. Because of the increased swelling and weight gain, Linda Woodruff, APRN-CNP,[7] had Plaintiff discontinue use of gabapentin on three occasions, each time prescribing a narcotic as an alternative pain medication. *See* R. 292-94 (May 2, 2013), 289-90 (May 15, 2013), 279-81 (Oct. 2, 2013). And though the ALJ relied on Plaintiff's lack of need for narcotics as of August 2012, he failed to acknowledge that Plaintiff was later prescribed narcotics for her pain. *See* R. 292-94 (May 2, 2013), 287-88 (May 9, 2013), 289-90 (May 15, 2013), 284-86 (July 10, 2013), 279-81 (Oct. 2, 2013), 276-78 (Oct. 29, 2013). The ALJ's reliance upon Dr. Pendleton's records to find that Plaintiff's symptoms "are manageable with medication" failed to account for the pain and other symptoms that are evidenced in the records from Ms. Woodruff. *See* R. 276-300 (Plaintiff's complaints of pain, paresthesia, swelling, edema, weight gain).

Finally, reviewing the records from Ms. Woodruff, Exhibit 9F, the ALJ stated that "[w]hile there were indications of tenderness, there was no indication of severe pain." R. 18. However, several of Ms. Woodruff's records indicate that Plaintiff reported her pain as an 8 or 9, and physical examinations evidenced pain as well as abnormal movement and

---

[7] While Ms. Woodruff (as noted by the ALJ) is not an "acceptable medical source," R. 17, and therefore is unable to provide evidence to establish the existence of an impairment, her observations still must be considered as evidence of "the severity of [Plaintiff's] impairment[s] and how [they] affect[] [her] ability to do work." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (2014).

muscle spasms. *See* R. 292-93 (May 2, 2013); 285 (July 10, 2013); 282-83 (Sept. 5, 2013); 279-81 (Oct. 2, 2013); 276-77 (Oct. 29, 2013).

As explained above, the ALJ's decision must be based on the record as a whole. *See Wall*, 561 F.3d at 1052 ("[W]e meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (internal quotation marks omitted)). Certainly, the ALJ is not required to discuss every piece of evidence, but "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010; *see also Hardman*, 362 F.3d at 681 ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").[8] Here, the ALJ's discussion reflects that he focused on particular evidence and does not show that he considered other probative evidence that was in the record and apparently rejected by him.

---

[8] The ALJ suggests that it is significant that the records from Dr. Pendleton and Ms. Woodruff did not include limitations or restrictions. *See* R. 17-18 (citing Exs. 7F, 8F, 9F). However, the absence of such limitations was not unusual given that Plaintiff was neither working nor being seen for Social Security purposes during her visits to those providers. *See Ford v. Apfel*, No. 99-5134, 2000 WL 702752, at *4 (10th Cir. May 26, 2000) (finding that the absence of specific limitations in the record "means nothing" when claimant was not working or being seen for social security disability purposes at the times of the medical evaluations); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (reversing when ALJ's determination that plaintiff could do sedentary work was not supported by substantial evidence and, instead, the ALJ relied upon "*the absence of contraindication* in the medical records").

2. Substantial Evidence

Moreover, absent additional explanation and findings by the ALJ, the Court cannot conclude that the ALJ's assessment that Plaintiff has the ability to stand or walk for six hours of an eight-hour workday is supported by substantial evidence.

There was significant evidence in the record before the ALJ that Plaintiff had difficulty walking, had experienced frequent falls, and used a walker. When Plaintiff submitted her SSA application, the SSA interviewer noted that she had difficulty standing and walking. R. 156. At the hearing, Plaintiff testified that her doctor had told her to use a walker to prevent falls. R. 38. Plaintiff's MRI records also include frequent falls in her medical history, and Dr. Pendleton noted that Plaintiff's "significant left leg pain" had caused her to "fall[] a few times." R. 256, 258, 274. The records from Ms. Woodruff indicate that Plaintiff had been seen for treatment following falls, including specifically noting a fall "when [Plaintiff] didn't have her walker with her." R. 276, 279, 281, 283.

Additionally, though it was not included in the record before the ALJ, Plaintiff submitted to the Appeals Council a prescription that she had received for a walker. *See* R. 301 (Ex. 10F). The Appeals Council denied review, but accepted the prescription into the record. *See* R. 4. When the Appeals Council denies review but expressly accepts new evidence into the record, it is not required to discuss its analysis of that evidence. *Vallejo v. Berryhill*, 849 F.3d 951, 955-56 (10th Cir. 2017). This is true even of opinion evidence that an ALJ would have been required to expressly consider, such as a treating physician or psychologist opinion. *Id.* On appeal, however, the reviewing court still must decide whether the disability determination is supported by substantial evidence in the record as a

whole, specifically including the new evidence that the Appeals Council made part of the record. *Id.* at 956. Thus, Plaintiff's prescription for an assistive device is relevant to the Court's consideration of whether the ALJ's RFC determination is supported by substantial evidence.

Difficulty walking, frequent falls, and the prescribed need for a walker reasonably would impact Plaintiff's ability to stand or walk for six hours in an eight hour day, as well as her abilities to lift and/or carry; push and/or pull; occasionally stoop; frequently climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, kneel, crouch, or crawl. *See* R. 15. Other than referencing Plaintiff's testimony that she uses a walker and had problems with falling prior to her 2012 surgery, and some problems walking thereafter, *see* R. 17, the ALJ did not discuss Plaintiff's difficulty walking without this assistive device. Absent additional explanation by the ALJ, the Court when considering the record as a whole, including the evidence of Plaintiff's difficulties walking and her prescription for a walker to assist her in walking, finds that the RFC finding that Plaintiff can stand or walk for six hours in an eight-hour day is not supported by substantial evidence.[9]

---

[9] Plaintiff also argues that the ALJ did not properly evaluate her "extreme" obesity or her pulmonary dysfunction, which Dr. Pendleton noted impacted her ability to ambulate. Pl.'s Br. at 21-23; *see* R. 272. On remand, the ALJ should "consider the combined effect of all of [Plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of such severity" as to warrant an award of benefits. 42 U.S.C. § 423(d)(2)(B); *see also Wells*, 727 F.3d at 1065 (explaining that when "assessing [a] claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe" (emphasis omitted)); SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002) (requiring an ALJ to consider the effects of obesity throughout the sequential evaluation process and instructing that "the combined effects of obesity with other impairments can be greater than the effects of each

## C. Conclusion

"The record must demonstrate that the ALJ considered all of the evidence . . . ." *Clifton*, 79 F.3d at 1009. Here, the record does not do so. Because the ALJ considered some medical evidence to the exclusion of contrasting evidence, without adequate explanation, and disregarded other evidence and testimony regarding Plaintiff's ability to ambulate and her vision problems, the Court finds that the ALJ did not demonstrate that he properly considered all of the evidence. Moreover, because the ALJ did not consider all of the relevant evidence regarding Plaintiff's ability to see and to walk, the RFC determination is not supported by substantial evidence. *See Weigel v. Astrue*, 425 F. App'x 706, 708-09 (10th Cir. 2011) (remanding because RFC decision was not supported by substantial evidence when ALJ did not sufficiently "consider relevant evidence"). Remand is therefore required.

## D. Whether the ALJ's Decision Otherwise Contains Reversible Error

Based on the recommendation that this matter be remanded, the Court does not address Plaintiff's claims regarding her credibility. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). On remand, however, the ALJ must also reevaluate Plaintiff's testimony regarding her subjective complaints and pain, applying the regulations adopted by the Commissioner during the time this action has been pending. *See* 20 C.F.R. §§ 404.1529, 416.929 (eff. Mar. 27, 2017); SSR 16-3p, 2016 WL 1119029 (eff. Mar. 28, 2016); *Poppa*, 569 F.3d at 1171 (10th Cir. 2009) ("Since the purpose of the credibility

---

of the impairments considered separately").

evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is REVERSED and REMANDED. Judgment will issue accordingly.

IT IS SO ORDERED this 11th day of September, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE